UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BCB HOLDINGS LIMITED and<br>THE BELIZE BANK LIMITED,<br><br>　　　Petitioners/Plaintiffs<br><br>　　　v.<br><br>THE GOVERNMENT OF BELIZE,<br><br>　　　Respondent/Defendant. | Civil Action No. 14-1123 (CKK) |

**MEMORANDUM OPINION**
(February 6, 2017)

This matter comes before the Court on Petitioners' [53] Motion for an Order Pursuant to 28 U.S.C. § 1610(c) Authorizing Enforcement of Judgment and [54] Motion for Anti-Suit Injunction and Temporary Restraining Order.  Petitioners BCB Holdings Limited ("Holdings") and the Belize Bank Limited ("BBL") (collectively "Petitioners") initiated an arbitration against the Government of Belize ("GOB") on October 16, 2008, before the London Court of International Arbitration ("LCIA") in London, England.  The LCIA issued an award in favor of Petitioners, and this Court subsequently confirmed that award and entered judgment in favor of Petitioners.  The GOB apparently does not intend on paying the judgment entered by this Court.

Petitioners now request an order authorizing the enforcement of that judgment and also seek an anti-suit injunction enjoining the GOB from taking certain actions in Belize that would effectively prevent Petitioners from enforcing this Court's judgment.  For the reasons set forth below, the Court GRANTS Petitioners' [53] Motion for an Order Authorizing Enforcement of Judgment, DENIES WITHOUT PREJUDICE Petitioners' [54] Motion for Anti-Suit Injunction

on the present record, and DENIES Petitioners' [54] Motion for a Temporary Restraining Order on the grounds asserted in this case.

## I. BACKGROUND

Aggrieved by the repudiation of a Settlement Deed entered into between the parties, Petitioners initiated an arbitration against the GOB on October 16, 2008, before the LCIA in London, England. Decl. of Jessica Wells, ECF No. 32-3, at ¶ 5(c). The GOB opted to abstain from the arbitration, and the proceedings were accordingly conducted *ex parte*. *Id.* On August 18, 2009, the arbitral tribunal issued an award in favor of Petitioners and concluded that the GOB owed Petitioners BZ $40,843,272.34 in damages plus interest and costs. *Id.* at ¶ 5(f).

On August 21, 2009, Petitioners sought to enforce their arbitral award in Belize. Decl. of Louis Kimmelman, ECF No. 1-2, at ¶ 16. The GOB opposed the enforcement of the award, arguing that it was contrary to the law and public policy of Belize. *Id.* The Supreme Court of Belize enforced the Award in late 2010, and the GOB appealed this decision in early 2011 to the Belize Court of Appeals. *Id.* at 17-18. The appellate court reversed the decision below and held that the Award would not be enforced. *Id.* at 19. On July 26, 2013, the Caribbean Court of Justice ("CCJ"), Belize's final court of appeal, affirmed on public policy grounds. *Id.* at 20.

On July 1, 2014, Holdings and BBL filed in this Court a Petition to Confirm Foreign Arbitration Award and to Enter Judgment or, Alternatively, Complaint to Recognize and Enforce Foreign Money Judgment. *See* Petition to Enforce, ECF No. 1. This Court confirmed Petitioners' arbitration award on June 24, 2015. *See BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233 (D.D.C. 2015), *aff'd*, 650 F. App'x 17 (D.C. Cir. 2016), *cert. denied*, No. 16-136, 2017 WL 69187 (U.S. Jan. 9, 2017). A copy of this opinion is attached hereto as Exhibit A.

The Court then entered judgment confirming the Award and converting it into U.S. dollars, plus prejudgment interest, in the total amount of $27,429,996.56.  ECF No. 47.

Respondents opposed the petition to confirm the award on numerous grounds, one of which is of particular note here.  Respondents claimed that the final judgment rendered by the CCJ refusing to enforce the arbitration award prevented the Petitioners from enforcing the award in this jurisdiction.  *See BCB Holdings Ltd.*, 110 F. Supp. 3d at 245-46.  Specifically, Respondents argued that the doctrines of res judicata, collateral estoppel, and international comity barred the petition to confirm because a competent court, the CCJ, had already issued a final judgment refusing to enforce the Award.  *Id.* at 245.  The Court rejected this argument.  *Id.* The Court explained that only the country in which an award is made, referred to as the primary jurisdiction, may set aside an award.  *Id.* at 246.  All other member-countries to the New York Convention are designated as secondary jurisdictions.  Although these secondary jurisdictions may refuse to enforce an award, their doing so does not preclude other jurisdictions from enforcing it.  *Id.*  In this case, England—which did recognize and confirm the award—was the primary jurisdiction, and accordingly the CCJ decision did not prevent this Court from enforcing Petitioners' award.  *Id.*

Respondents appealed this decision to the Court of Appeals for the D.C. Circuit, which affirmed this Court's judgment in its entirety.  *See BCB Holdings Ltd. v. Gov't of Belize*, 650 F. App'x 17, 20 (D.C. Cir. 2016), *cert. denied*, No. 16-136, 2017 WL 69187 (U.S. Jan. 9, 2017).  A copy of this opinion is attached hereto as Exhibit B.  The United States Supreme Court then denied Respondent's petition for certiorari on January 9, 2017.  *See Gov't of Belize v. BCB Holdings Ltd.,* No. 16-136, 2017 WL 69187, at *1 (U.S. Jan. 9, 2017).  On January 23, 2017,

Petitioners filed a motion for an order pursuant to 28 U.S.C. § 1610(c) authorizing enforcement of the judgment, which is now pending before this Court.

Thereafter, Belize took a number of steps that were apparently aimed at preventing Petitioners from taking any further actions to enforce their judgment from this Court. On January 27, 2017, Belize introduced legislation in the Belizean Parliament entitled The Crown Proceedings (Amendment) Act 2017. This Act criminalizes efforts to enforce foreign judgments against Belize in any court outside Belize. The Act states: "Where it has been determined by a court in Belize, that a foreign judgment is unlawful, void or otherwise invalid, a person who, whether in or outside of Belize, and whether by the institution of proceedings or otherwise, enforces or attempts to enforce the foreign judgment commits an offence." Pets.' Ex. A, ECF No. 54-2 (Crown Proceedings (Amendment) Act 2017), § 3–29B(1). Violation of this Act results in criminal penalties for individuals consisting of fines not exceeding BZ $150,000, or terms of imprisonment not exceeding two years, or both. *Id.*, § 3–29B(2). The statute states that "[a]n application shall lie to the Supreme Court to issue an injunction against a person restraining the person from commencing, intervening in or continuing any proceedings for enforcement of a foreign judgment, whether in or outside of Belize, on the basis that a competent court in Belize has declared such foreign judgment unlawful, void or otherwise invalid." *Id.*, § 3–29B(3).

On the same day, Belize introduced legislation entitled The Central Bank of Belize (International Immunities) Act, 2017. This Act states that "[a] person commits an offence who, whether in Belize or outside of Belize, and whether in respect of a matter occurring before or after the coming into operation of this Act . . . (a) has instituted, intervened in or sought the conduct of proceedings in any foreign State, being proceedings from which the Bank or the property of the Bank would, by virtue of section 3, be immune . . . ." Pets.' Ex. B, ECF No. 54-3

(Central Bank of Belize (International Immunities) Act, 2017), § 4–(1).  Section 3 of the act purports to immunize the property of the Central Bank of Belize from proceedings for attachment, arrest or execution in any foreign court.  *Id.*, § 3.

There is no dispute as to the purpose of these statutes.  On January 27, 2017, the Prime Minister of Belize expressly stated in a speech to the Belize Parliament that the statutes are intended to interfere with Petitioners' efforts to enforce this Court's judgment against the GOB:

> Well, not to put too fine a point on it, and in fact, to speak to circumstances that we're all already familiar with, we had thought it prudent to do this because of the fact that the Ashcroft Concerns, BSDL, BCB Holdings, Ltd., which I gather is now trading—has changed its name to Caribbean Investment Holdings, Ltd.—and The Belize Bank, Ltd. have obtained final judgment in the United States on arbitral awards given against the government of Belize and in favor of BSDL, Belize Bank, Ltd., and BCB Holdings, Ltd. Last Tuesday, those entities filed a motion in the District Court in Washington, D.C., filed an application to be allowed to enforce those judgments against the government of Belize. Notwithstanding that certainly in one case, as all Belize, and indeed now all the world knows, the final judgment flies completely in the face of the decision of our highest court, the CCJ, which decision says that that arbitral award is unenforceable, because it is repugnant to public policy, and it is void and illegal.

Decl. of Louis B. Kimmelman, ECF No. 54-1, ¶ 15.  On January 31, 2017, the Belizean legislature enacted both statutes.  *Id.* ¶ 16.

On February 1, 2017, the GOB sent the Registrar for the CCJ a letter stating that it "will tomorrow file with the [CCJ] an urgent inter party application for an Anti-Enforcement Injunction to restrain [Petitioners] from enforcing or causing to be enforced the very same LCIA Final Award for which this Honourable Court, in the matter at caption, has declined enforcement by its judgment dated July 26, 2013."  Pets.' Ex. C, ECF No. 54-4 at 1.  The GOB represented to

the CCJ that the need for injunctive relief was urgent because Petitioners had filed a motion for an order authorizing enforcement of judgment in this Court. *Id.* at 1-2.

On February 2, 2017, the Registrar responded to the GOB's letter, explaining that the CCJ "has not observed from the content of your communication any basis on which it can exercise powers which are ordinarily exercised by the Supreme Court. Accordingly, it may be more appropriate to file your application in the Supreme Court of Belize unless you can show the Caribbean Court of Justice has jurisdiction." Pets.' Ex. D, ECF No. 54-5 at 4. The GOB filed its application for injunctive relief with the CCJ regardless, seeking "[a]n Order restraining [Petitioners,] their successors, assigns, and/or subsidiaries whether by themselves, their officers, servants, affiliates, or agents from enforcing or causing to be enforced the said LCIA Final Award or any judgment upon the said award, in any jurisdiction or to commence or continue any other legal or arbitral proceedings in any country or jurisdiction whether in or outside of Belize relating to or arising out of the said final Award." Pets.' Ex. G, ECF No. 54-8 at 2. The CCJ immediately denied the GOB's application, holding that "the application for injunctive relief filed by the Respondent/Applicant on the 2nd day of February, 2017 is hereby dismissed for lack of jurisdiction, there being no pending appeal before the Court." Pets.' Ex. I, ECF No. 54-10.

Later that day, the GOB notified Petitioners that it would seek this same injunctive relief in the Supreme Court of Belize. Pets.' Ex. J, ECF No. 54-11. The GOB provided a draft of the application it intended to file, which sought an order that Petitioners "be restrained from enforcing or causing to be enforced the Final Award issued by the London Court of International Arbitration (LCIA) in Arbitration No. 81169 in the sum of BZ $40,843,272.34 in Damages, £206,248.14 in arbitration costs and BZ $2,960,735.69 in legal and professional costs in favour of the Respondents ('the Award') or upon any judgment upon the said Award in any jurisdiction

or to commence or continue any other legal or arbitral proceedings in any country or jurisdiction whether in or outside of Belize relating to or arising out of the said final Award or upon any judgment upon the said Award." Pets.' Ex. K, ECF No. 54-12, at 2.

On Friday, February 3, 2017, after being notified of this application, Petitioners filed the pending motion for an anti-suit injunction and a temporary restraining order in this Court. ECF No. 54. Petitioners sought from this Court an injunction preventing the GOB from "(i) initiating, prosecuting or maintaining any proceeding for injunctive relief in the courts of Belize, or in any other foreign court, against Holdings that seeks to restrain, interfere with or prevent Holdings from enforcing this Court's Judgment (and the underlying arbitral award) in the United States or (ii) threatening Holdings with any injunction or other court order that seeks to restrain, interfere with or prevent Holdings from enforcing this Court's Judgment (and the underlying arbitral award) in the United States." Proposed Order, ECF No. 54-15.

The Court held a teleconference with the parties on Petitioners' motion the afternoon it was filed, during which counsel for the GOB represented to the Court and to Petitioners that the GOB had already gone before the Supreme Court of Belize earlier that day to submit its application and provide oral argument. *See* Transcript of February 3, 2017 Telephone Conference, ECF No. 57-5 at 10:11-15 ("within the last hour the Government of Belize already went into court, already presented oral argument on their request for an injunction, and the judge has taken the matter under submission"). Counsel for Petitioners was not able to attend the argument on the extremely short notice. *Id.* at 13:22-14:7. At the conclusion of this teleconference, the Court ordered the GOB to respond to Petitioners' motion for a temporary restraining order pending the Court's decision on Petitioners' motion for an anti-suit injunction by no later than 10:00 a.m. on Monday, February 6, 2017. 2/3/2017 Min. Order. The Court also

7

ordered the parties to appear for a hearing on the temporary restraining order at 11:00 a.m. Monday morning. *Id.*

Late Sunday night, Respondents filed a response to Petitioners' Motion for an Order Authorizing Enforcement of Judgment. ECF No. 56. Although challenging the scope and wording of the order sought by Petitioners in that motion, Respondents conceded that Petitioners were entitled to an order pursuant to section 1610(c) "confirming that a reasonable period of time has elapsed since entry of the Judgment, and that GOB has been given notice of entry of Judgment required by Section 1608(e)." *Id.* at 1.

On Monday morning the GOB filed its opposition to Petitioners' motion for a temporary restraining order. ECF No. 57. The GOB revealed therein that since the teleconference on Friday afternoon, the GOB had succeeded in obtaining the sought injunction from the Supreme Court of Belize, preventing Petitioners from doing anything further to enforce the judgment issued by this Court. *Id.* An hour later, the Court held a hearing on the record on Petitioners' pending motions. Counsel for the GOB appeared by telephone. Petitioner BBL did not attend at all, for fear of the criminal penalties that would result from violating the Belize injunction. Counsel for Petitioner Holdings appeared pro forma, but did not present any argument or otherwise take any action that could be construed as attempting to enforce or causing to be enforced the judgment in this case. Counsel for GOB warned counsel for Holdings that making any representations to the Court could result in Holdings being criminally punished for violating the Belize injunction.

## II.   DISCUSSION

**A.  Petitioners' Motion for an Order Authorizing Enforcement of Judgment**

The Court is in receipt of Petitioners' Motion for an Order Authorizing Enforcement of Judgment and Respondents' response to that motion.  Both sides have had an opportunity to brief this matter and the Court considers it fully submitted.  In their motion, Petitioners seek an order pursuant to 28 U.S.C. § 1610(c), authorizing enforcement of the judgment against the GOB.  Section 1610(c) states that:

> No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

28 U.S.C. § 1610(c).  Petitioners argue that the GOB has had sufficient notice of the judgment, and that a reasonable amount of time has passed following entry of judgment, for it to seek attachment or execution.

Respondent concedes, at least for the purposes of this motion, that Petitioners are entitled to an order pursuant to section 1610(c) "confirming that a reasonable period of time has elapsed since entry of the Judgment, and that GOB has been given notice of entry of Judgment required by Section 1608(e)."  *See* Resp.'s Opp'n to Mot. for Order Authorizing Enforcement of Judgment, ECF No. 56, at 1.  Respondent only opposes Petitioners' motion to the extent it more broadly requests an order that Petitioners are "authorized to enforce" this Court's judgment.  Respondent requests a more narrowly drafted order that states only that the notice and time requirements of section 1610(c) are satisfied.

The Court GRANTS Petitioners' motion.  The Court notes that it does not interpret Petitioners' motion as asking for anything broader than what Respondents concede Petitioners are entitled to: a determination "that a reasonable period of time has elapsed following the entry

9

of judgment and the giving of any notice required under section 1608(e) of this chapter." *Id.* at 5. Accordingly, the Petitioners' motion is GRANTED to the extent it seeks this determination. The Petitioners' motion is also GRANTED in that the Court orders that Petitioners are authorized to seek to enforce their judgment via attachment or execution of GOB property in the appropriate jurisdiction. The Court does not make any determination as to the propriety of attachment or execution of any particular property under subsections (a) or (b) of section 1610. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F. Supp. 2d 260, 270-71 (D.D.C. 2011) ("A 1610(c) order, in the context of this case, *does not* authorize the attachment or execution of particular property—or any property at all . . . Any court, whether this or another, would be required to evaluate a proposed attachment of specific property in this case by reviewing the jurisdictional provisions of § 1610(a)-(b), as well as any other immunities that might apply.").

**B. Petitioners' Motion for Anti-Suit Injunction and Temporary Restraining Order**

Having granted Petitioners' motion under section 1610(c), there is no longer any need for this Court, on the present record, to issue an anti-suit injunction. Anti-suit injunctions are intended to protect the Court's jurisdiction. *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984) ("Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants."). Although the actions of the GOB are apparently aimed at preventing Petitioners from enforcing the judgment of this Court, at this time they do not interfere with this Court's jurisdiction. This Court has confirmed Petitioners' arbitration award, entered judgment in favor of Petitioners, and now authorized Petitioners to proceed to seek to enforce this judgment in the appropriate jurisdiction in which it can find attachable property of the GOB. Presently there is no issue left for this Court

to adjudicate.  Accordingly, strictly on the present record before the Court, the need to protect this Court's jurisdiction does not warrant issuing an anti-suit injunction.  Petitioners' motion for an anti-suit injunction is therefore DENIED WITHOUT PREJUDICE.  Given that the temporary restraining order Petitioners sought was intended to preserve the status quo pending resolution of the Petitioners' motion for an anti-suit injunction, the Court will likewise DENY Petitioners' motion for a temporary restraining order on the grounds asserted.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioners' [53] Motion for an Order Pursuant to 28 U.S.C. § 1610(c) Authorizing Enforcement of Judgment.  The Court determines that the GOB has been given all required notice and that a reasonable period of time has elapsed following the entry of judgment in this matter and the giving of such notice for Petitioners to now seek attachment or execution pursuant to 28 U.S.C. § 1610(a)-(b).  The Court further orders that Petitioners may now seek attachment or execution of GOB property to satisfy this Court's judgment pursuant to 28 U.S.C. § 1610(a)-(b) in the jurisdictions where such attachment or execution is appropriate.  Additionally, the Court DENIES WITHOUT PREJUDICE Petitioners' [54] Motion for Anti-Suit Injunction on the present record, and DENIES Petitioners' [54] Motion for Temporary Restraining Order on the grounds asserted therein.

    /s/                                
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

Attachments.